UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BANK OF LOUISIANA,                          CIVIL ACTION
G. HARRISON SCOTT,
SHARRY SCOTT, AND
JOHNNY CROW
V.                                          NO. 16-13585

FEDERAL DEPOSIT
INSURANCE CORPORATION                       SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court is the defendant's motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. For the following reasons, the motion is GRANTED.

**Background**

This motion to dismiss arises out of the Federal Deposit Insurance Corporation's investigation and charges against the Bank of Louisiana for violations of agency regulations. In response to the FDIC's enforcement proceedings against the Bank, the Bank and others filed suit in this Court alleging constitutional violations against the Bank through the FDIC's practices.

The Bank of Louisiana is a small, community bank founded in New Orleans in 1958 by former President G. Harrison Scott, James Comiskey, and Dr. Nicholas Chetta. The Bank provides banking services to a small, local, and well-known customer base.

On October 22, 2013, the FDIC filed charges against Sharry Scott, G. Harrison Scott, and Johnny Crow (the directors) for violation of Regulation O. The FDIC alleged that the directors

1

illegally approved a loan to a director as well as a loan to an executive officer. The Regulation O proceeding sought an award of civil penalties of $10,000 from each of the three directors, as well as court costs and attorneys' fees of more than $200,000. The notice of charge alleged that between October 2009 and November 2011, the directors caused the bank to engage in federal violations by providing favorable treatment to bank insiders by making improper loans and allowing the insiders to overdraw their accounts on multiple occasions without collecting overdraft fees. On July 2, 2014, the administrative law judge[1] issued a 29-page recommended decision after full briefing and conducting an evidentiary hearing. The ALJ recommended that each of the three named directors pay a civil penalty of $10,000. The plaintiffs waited 90 days to file exceptions to the recommendation. Although the FDIC's Uniform Rules of Practice and Procedure require that a party file exceptions to a recommended decision within 30 days, the FDIC Board considered and addressed in its decision the untimely exceptions. On December 22, 2014, the plaintiffs filed a petition for review of the FDIC Board's final decision with the United States Court of Appeals for the Fifth Circuit. On September 16, 2015, the plaintiffs filed an unopposed motion to stay the appeal pending the resolution of the FDIC's second enforcement proceeding against

---

[1]   The ALJ, who is an FDIC employee, presided over both proceedings against the bank.

the bank; the Fifth Circuit entered an order staying the proceeding until the conclusion of the enforcement action against the bank.[2]

On November 1, 2013,[3] the FDIC filed three separate cease-and-desist charges against the bank. The cease and desist proceeding sought three cease-and-desist orders and an award of civil penalties in the amount of $540,000. The notice of charges alleged that the bank was operating in an unsafe and unsound manner based on inadequate management, deficient asset quality, deficient earnings, various violations of law, and compliance violations with respect to the Bank Secrecy Act, The Electronic Funds Transfer Act, the Real Estate Settlement Practices Act, the Truth in Lending Act, the Home Mortgage Disclosure Act, and the National Flood Insurance Program. This notice sought an order requiring the bank to cease and desist from these practices and to pay a civil penalty in the amount of $500,000 for Bank Secrecy Act violations. The ALJ conducted a six-day trial in March 2015; the parties introduced evidence, cross-examined witnesses, and filed post-hearing and reply briefs. On May 17, 2016, the ALJ issued a decision, recommending a $500,000 civil penalty; the bank filed exceptions to the recommended decision with the FDIC Board. The Board's final

---

[2]    The second enforcement proceeding against the bank has concluded since the filing of this motion to dismiss.
[3]    The defendant's motion states that this notice of charges was filed on November 4, 2013; however, the plaintiffs' complaint and the record indicates this notice was filed on November 1, 2013.

order affirms the ALJ's recommendation and imposes a $500,000 civil penalty against the bank for Bank Secrecy Act violations and an order to cease and desist for various statutory and regulatory violations. The plaintiffs have now filed a timely appeal of that decision with the Fifth Circuit, with no decision yet.

The plaintiffs filed suit in this Court. The plaintiffs' amended complaint asserts four causes of action: (1) a permanent injunction to stop the FDIC Board from issuing a final decision in the then-pending enforcement proceeding; (2) a request for declaratory judgment that the FDIC violated various statutes and constitutional provisions in conducting both enforcement proceedings; (3) damages; and (4) sanctions.[4] In support of the constitutional violations, the plaintiffs allege that the bank and the directors were subject to age discrimination, retaliation, ridicule, and mockery, and were denied procedural due process rights guaranteed under the United States Constitution. Specifically, the plaintiffs allege that an assistant FDIC director embarked on a vendetta campaign to unseat the bank's

---

[4]    On November 18, 2016, the Board issued its final order in the cease and desist proceeding. Therefore, the plaintiffs assert that they abandon their request for injunctive relief to enjoin the cease and desist proceedings as moot. Additionally, the plaintiffs abandon their claims for damages because of their ability to move for sanctions should this Court find it has subject matter jurisdiction and enter judgment in favor of the plaintiffs. Therefore, the only claim before the Court for purposes of this motion to dismiss is the request for declaratory judgment that the FDIC violated the plaintiffs' constitutional rights.

4

president. The mission of the alleged vendetta, according to the plaintiffs, was to remove the chairman and president of the bank, G. Harrison Scott, because he was too old. The plaintiffs also allege that the ALJ unconstitutionally kept Scott from conferring with counsel during an overnight recess at the cease and desist hearing, in violation of the bank's constitutional rights to counsel and to free speech, and was wrongfully denied the right to make a proffer of evidence. The plaintiffs assert that this Court has jurisdiction for the age discrimination and constitutional violations because without this Court's intervention, these claims will escape a meaningful judicial review.

The defendant moves the Court to dismiss this case for lack of subject matter jurisdiction. In response, the plaintiffs contend that 12 U.S.C. § 1818(h) and Free Enterprise Fund v. Public Company Accounting Oversight Board, 561 U.S. 477 (2010) allow this Court to exercise subject matter jurisdiction for these allegedly "wholly collateral" constitutional claims. The Court now determines whether Congress has foreclosed its jurisdiction to hear these constitutional claims.

I.

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "As a court of limited jurisdiction, a federal court must affirmatively ascertain

subject-matter jurisdiction before adjudicating a suit. The district court should dismiss where it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." Venable v. Louisiana Workers' Compensation Corp., 740 F.3d 937, 941 (5th Cir. 2014)(citations and internal quotations omitted).

Contrary to a 12(b)(6) motion, the Court may find a plausible set of facts to support subject matter jurisdiction by considering any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Spotts v. United States, 613 F.3d 559, 565-66 (5th Cir. 2010)(citation omitted). "The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction." Alfonso v. United States, 752 F.3d 622, 625 (5th Cir. 2014)(quoting In re FEMA Trailer Formaldehyde Prods. Liab. Litig., 646 F.3d 185, 189 (5th Cir. 2011)(internal citation and quotation marks omitted)).

The 12(b)(1) standard is similar to that applicable to motions to dismiss under Rule 12(b)(6). See Williams v. Wynne, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008)(observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion). "'[T]he central issue

6

[in deciding a motion to dismiss] is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.'" <u>Gentilello v. Rege</u>, 627 F.3d 540, 544 (5th Cir. 2010)(citation omitted).

II.

A. Federal District Courts' Original Jurisdiction

In general, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331. However, "Congress may choose to limit a district court's jurisdiction over the actions of a federal administrative agency." Congress usually chooses to remove certain claims from a district court's general jurisdiction to place these claims into a systematic statutory review scheme. <u>Elgin v. Dep't. of Treasury</u>, 132 S. Ct. 2126, 2141 (2012). "[W]hen Congress creates procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures," which often include procedures for judicial review of agency decisions, "are to be exclusive." <u>Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.</u>, 561 U.S. 477, 489 (2010) (internal quotations omitted). However, this rule is not absolute. <u>See</u> <u>id.</u>

B. FDIC Jurisdictional Statute

12 U.S.C. § 1818(h)(2) specifically addresses judicial review of an FDIC final order. Section 1818(h)(2) provides that:

7

> Any party to any proceeding . . . may obtain a review of any order . . . by filing in the court of appeals of the United States for the circuit in which the home office of the depository institution is located, or in the United States Court of Appeals for the District of Columbia Circuit, within thirty days after the date of service of such order, a written petition praying that the order of the agency be **modified, terminated, or set aside**. . . . Upon the filing of such petition, such court shall have [exclusive] jurisdiction . . . to affirm, modify, terminate, or set aside, in whole or in part, the order of the agency.

(emphasis added). The parties before this Court do not dispute whether the Court of Appeals has exclusive jurisdiction to hear challenges to an FDIC final order. The parties do, however, dispute whether a district court has jurisdiction to hear age discrimination and due process violation claims stemming from an FDIC enforcement proceeding. The issue is whether these challenges are so related to an agency proceeding that the challenges fall under the exclusive purview of the agency with review through the Court of Appeals. The Court believes it does.

### III.

At the current stage in the proceedings, the plaintiffs seek a declaratory judgment from this Court and reserve the right to pursue sanctions or damages if appropriate at a later stage. The defendant suggests that the first step in determining whether the Court has jurisdiction is to rely on § 1818(i)(1), which states that "no court shall have jurisdiction to affect by **injunction or otherwise** the issuance or enforcement of any notice or order . . .

8

. ." (emphasis added). The Fifth Circuit has determined that "injunction or otherwise" encompasses declaratory relief; the precise relief the plaintiffs seek. See Groos Nat'l Bank v. Comptroller of Currency, 573 F.2d 889, 895 (5th Cir. 1978). Therefore, the FDIC urges that the plaintiffs' request for a declaratory judgment to hold the FDIC's proceedings unconstitutional would undoubtedly affect the "enforcement" of an order issued by the FDIC board. It is therefore the FDIC's position that the plaintiffs' request is barred by the statutory language and the Fifth Circuit's interpretation of that language. The FDIC urges that the proceedings are final at the agency level; and that declaring the final orders unconstitutional would interfere with the "enforcement" of these finals orders. Holding the proceedings unconstitutional would, the FDIC correctly submits, affect the enforcement of FDIC final orders because there would be no final order to enforce. The Court agrees that, by virtue of the statute's clear language, Congress' intent to preclude district court jurisdiction "was 'fairly discernable.'"[5] Elgin, 132 S. Ct. at

---

[5]    The plaintiffs make a textual argument that Congress did not strip federal district courts of jurisdiction. In support, the plaintiffs rely on 15 U.S.C. § 78y. The Free Enterprise Court interpreted Section 78y, which states that a person aggrieved by final order of the Commission . . . **may** obtain review of the order in the United States Court of Appeals, to not bar the federal district court of jurisdiction. However, the Court reached that conclusion by applying the three-factor test, not merely by interpreting this section of a statute. Similarly, § 1818(h) states that a party **may** obtain a review of any final order by filing in

2132 (quoting <u>Thunder Basin Coal Co. v. Reich</u>, 510 U.S. 200, 207 (1994)).

However, this Court's inquiry does not end there. In <u>Free Enterprise</u> the Supreme Court wrote:

> Generally, when Congress creates procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive. But [there is a presumption] that Congress does not intend to limit jurisdiction if a finding of preclusion would foreclose all meaningful judicial review; if the suit is wholly collateral to a statute's review provisions; and if the claims are outside the agency's expertise.

<u>Free Enterprise</u>, 561 U.S. at 489 (internal quotation marks and citations omitted); <u>see also Thunder Basin</u>, 510 U.S. at 212-13. Notwithstanding the clear text of the statute, the Court also looks to whether the plaintiffs' claims satisfy the three factor <u>Free Enterprise</u> test, which would trump Congress' intent for exclusive jurisdiction within the agency and the Courts of Appeal for the plaintiffs' constitutional allegations.

IV.

<u>Free Enterprise</u> Application

A. Whether a Finding of Preclusion Forecloses All Meaningful Judicial Review

---

the court of appeals. The plaintiffs suggest this Court should reach the same conclusion as <u>Free Enterprise</u> based on the similarity of the statutes' wording. Because this textual argument does not in itself require the Court to find it has jurisdiction, the Court also considers the factors set forth in <u>Free Enterprise</u>.

In Thunder Basin, the statute in that case tracked language similar to the statute at issue here; both statutes stated that a petitioner may challenge adverse decisions in the appropriate court of appeals, whose jurisdiction shall be exclusive. 12 U.S.C. § 1818(i)(1); Thunder Basin, 510 U.S. at 208. The Supreme Court held that the petitioner's constitutional claim, though generally "beyond the jurisdiction of administrative agencies," was not reason to grant the district court subject matter jurisdiction. Thunder Basin, 510 U.S. at 215. The body reviewing the constitutional claim, however, was not the agency itself; an independent commission exercised the power to adjudicate that agency's disputes. Id. The Court did note, however, that even if the reviewing body was not independent, "the petitioner's statutory and constitutional claims [could] be meaningfully addressed in the Court of Appeals." Id.

Gupta v. S.E.C. held that a district court had jurisdiction to hear the plaintiff's equal protection claim. Gupta v. S.E.C., 796 F. Supp. 2d 503, 514 (S.D.N.Y. 2011). The district court reasoned that the plaintiff's equal protection claim did not affect whether he committed the acts the agency alleged. Id. The plaintiff sought declaratory and injunctive relief; however, the jurisdictional statutes in Gupta did not include the "injunctive or otherwise" bar, such that declaratory and injunctive relief were barred remedies. See 15 U.S.C. § 78y; Gupta, 796 F. Supp. 2d

11

at 506. But see 12 U.S.C. § 1818(i)(1). Therefore, underlying the court's strained holding is a finding that a potential grant of such injunctive relief would not be contrary to a statutory limitation. See Gupta, 796 F. Supp. 2d at 506, 514. Gupta is not a helpful guide, much less precedent for this Court.

The Seventh Circuit has observed that, even if an agency's fact finding capability is more limited than a district court's, these capabilities are "sufficient for meaningful judicial review." Bebo v. S.E.C., 799 F.3d 765, 773 (7th Cir. 2015); see also Hill v. S.E.C., 825 F.3d 1236, 1249-50 (11th Cir. 2016).

In this case, the plaintiffs contend that without this Court's intervention, meaningful judicial review is foreclosed because the FDIC's administrative process provides no reasonable mechanism for pursuing such constitutional claims. The plaintiffs' claims require investigation of FDIC personnel practices, and they argue the discovery that would be necessary to elicit admissible evidence corroborative of such claims has not been allowed. Additionally, the plaintiffs note that the FDIC is inherently conflicted in assessing such a constitutional claim against itself. This inherent conflict, the plaintiffs argue, is the precise reason which makes appealing this constitutional issue to the Fifth Circuit not a meaningful avenue of relief. The Court disagrees.

The fact that an agency may potentially have to review a claim against itself under Congress' statutory scheme does not as a

matter of law divert jurisdiction to a federal district court. The
Court accepts that the plaintiffs validly argue there is an
inherent conflict with the process it faces. But Congress has
spoken, the statutory text is straightforward, and the Supreme
Court has agreed that opportunity for review of such constitutional
claims is sufficient through the Court of Appeals. This Court is
not at liberty to rewrite its authority. That is for Congress.

B. Whether the Suit is "Wholly Collateral" to the Statute's
   Review Provisions

Claims are not wholly collateral where "it serves as the
'vehicle by which' a party seeks to prevail in an administrative
proceeding." Tilton v. S.E.C., 824 F.3d 276, 287 (2d Cir. 2016)
(quoting Elgin, 132 S. Ct. at 2139-40). Without further, concrete
guidance from the Supreme Court, circuit courts interpret this
requirement to mean that a constitutional claim is not wholly
collateral when it is "raised in response to, and so is
procedurally intertwined with, an administrative proceeding –
regardless of the claim's substantive connection to the initial
merits dispute in the proceeding." Tilton, 824 F.3d at 287.

The plaintiffs contend that their constitutional claims are
wholly collateral to the FDIC's proceedings because they do not
seek review of the merits of the final orders in this Court.
Instead, the plaintiffs' requested relief is for a declaratory
judgment that the enforcement proceedings were unconstitutional.

The Court accepts that the plaintiffs do not overtly seek a prohibited review of the final administrative orders on the merits. However, if the Court were to find merit in the plaintiffs' claims, the ultimate remedy sought is nevertheless to displace the final FDIC orders. The effect of such relief is exactly what Congress prohibits federal district courts from doing: terminating or setting aside the FDIC board's final orders. See 12 U.S.C. § 1818(i)(1).

C. Whether the Claims Are Outside the Agency's Expertise

Where a constitutional claim questions the constitutionality of the agency itself or is so connected to the work and proceedings of the agency, courts have been quick to find that agency expertise exists. See Elgin, 132 S. Ct. at 1240; Thunder Basin, 510 U.S. at 214-15; Jarkesy v. S.E.C., 803 F.3d 9, 28 (D.C. Cir. 2015).

The FDIC contends that the plaintiffs' constitutional claims are not outside of the FDIC's expertise. As evidence, it argues that the FDIC board has already considered and ruled on the same constitutional claims in the context and scope of the enforcement proceedings.

The plaintiffs counter that their claims easily satisfy the last Free Enterprise prong because they are not asking the Court to interpret the Financial Institution Supervisory Act or review any merits of the enforcement proceedings. Instead, the plaintiffs urge their fundamental and constitutional rights were violated and

14

those issues do not fall within the expertise of the FDIC. The argument fails.

The plaintiffs do not question the constitutionality or inherent authority of the FDIC. The plaintiffs do not question the procedures of the FDIC. Instead, the plaintiffs attack the motives underlying the FDIC's decision to initiate the proceedings.[6] No court has seemingly ruled on a similar issue where the plaintiffs bring equal protection and due process claims in the context of an FDIC enforcement proceeding. Therefore, this Court has no helpful precedent to guide it on how broadly or narrowly the Supreme Court or other courts construe the powers and abilities of this particular agency. Being left to turn to similar claims alleged against other agencies, this Court finds that the agency has the capability to consider such constitutional claims. Moreover, and the Court underscores, those claims can be raised on appropriate appeal to the Fifth Circuit.[7]

---

[6]    The plaintiffs make serious allegations that should not be taken lightly. An example of evidence the plaintiffs submit for the age discrimination claim are communications between FDIC employees, dated January 29, 2013 at 8:52 a.m. On that date an FDIC employee states that, "this place will never change until the old man dies, once you work here, you die here." There seems to be no dispute that this statement is referring to G. Harrison Scott and the Bank of Louisiana. It is troubling and merits close judicial scrutiny.

[7]    The Fifth Circuit has the authority to thoroughly consider the types of constitutional claims raised by the plaintiffs. The manner in which the record is built may vary, notably substantially, from that of the district court. This, however,

V.

Accordingly, the plaintiffs fail to carry their burden to establish that this Court has the authority to exercise subject matter jurisdiction. Not only does Congress limit federal district courts' jurisdiction under clear statutory law, but Supreme Court precedent on similar constitutional claims against administrative agencies teach that the plaintiffs' claims do present circumstances under which district courts have no statutory authority to exercise jurisdiction.

IT IS ORDERED that the defendant's motion to dismiss for lack of subject matter jurisdiction is hereby GRANTED. The plaintiffs' claims against the FDIC are DISMISSED, without prejudice to pursue them in the Fifth Circuit proceedings.

New Orleans, Louisiana, January 13, 2017

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

does not compel a finding that the plaintiffs' claims would evade appropriate consideration and review.

16